## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-00201-RMR-SBP

MARCUS A. MURPHY,

      Plaintiff,

v.

HARMONY COMMUNITIES CALIFORNIA,

      Defendant.

---

## ORDER

---

**Susan Prose, United States Magistrate Judge**

      Plaintiff Marcus A. Murphy, proceeding pro se[1], has filed three motions seeking entry of default judgment against Defendant Harmony Communities California: a Motion for Entry of Default Judgment by Clerk (ECF No. 62) and two Motions for Entry of Default Judgment by Court (ECF Nos. 66, 67) (collectively, the "Motions"). The Motions have been referred to the undersigned pursuant to 28 U.S.C. § 636(b), the Order Referring Case dated February 18, 2025 (ECF No. 14), and the Order Referring Motions dated November 6, 2025 (ECF No. 68). The

---

[1] Mr. Murphy alleges that he is a Colorado-licensed attorney and a member of the bar of this court and the Tenth Circuit, but he appears in this case pro se. ECF No. 4 ¶ 10. Public records of the Colorado Office of Attorney Regulation Counsel reflect that Mr. Murphy (attorney registration no. 48442) was admitted to the Colorado bar in 2015 and is currently suspended from the practice of law pursuant to disciplinary order 25PDJ23, which imposed a six-month suspension effective October 13, 2025. *See* Colorado Supreme Court, Office of Attorney Regulation Counsel, Attorney Information, https://www.coloradolegalregulation.com/attorney-search/attorney-information/?regnum=48442 (last visited Jan. 29, 2026).

Clerk entered default against Defendant on July 16, 2025 (ECF No. 59), and Defendant has never

appeared. Having carefully reviewed the Motions, the record before the court and the applicable

law, the court respectfully **ORDERS**[2] that the Motions are **DENIED WITHOUT**

**PREJUDICE**.

## I.     BACKGROUND[3]

This civil action arises out of Mr. Murphy's former tenancy at a mobile-home lot in

Fountain, Colorado, owned or managed by Defendant Harmony Communities California. In his

complaint (ECF No. 4), Mr. Murphy alleges the following:

Harmony Communities California owned or managed the mobile-home park where Mr.

Murphy resided at 5795 Southmoor Drive, Lot 53, in Fountain, Colorado, from August 2016

until January 2023, pursuant to a rental agreement originally entered with the park's prior

---

[2] Pursuant to 28 U.S.C. § 636(b), a United States magistrate judge may "hear and determine any pretrial matter pending before the court." 28 U.S.C. § 636(b)(1)(A). "When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision." Fed. R. Civ. P. 72(a). Courts in this District have treated denials of motions for default judgment without prejudice as non-dispositive orders. *See, e.g.*, *Vanderwal v. Trujillo*, No. 21-cv-03163-WJM-NYW, 2022 WL 2512820, at *1 n.1 (D. Colo. June 15, 2022); *Ward v. Lutheran Med. Ctr.*, No. 18-cv-00232-CMA-STV, 2019 WL 7630812, at *1 (D. Colo. June 26, 2019). Therefore, this court proceeds by order.

[3] Because the Clerk of Court has entered default against Harmony Communities California, see ECF No. 59, the entry of default has the effect of the defaulting party admitting all well-pleaded factual allegations in the operative complaint. *See Etana Custody Inc. v. Stratford Sols. SL*, No. 23-cv-03341-PAB-STV, 2024 WL 4123495, at *2 (D. Colo. Sept. 9, 2024) (citing 10A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2688.1 (4th ed., 2023 rev.)). The court also accepts as undisputed any facts set forth by the moving party in affidavits and exhibits. *Bricklayers & Trowel Trades Int'l Pension Fund v. Denver Marble Co.*, No. 16-cv-02065-RM, 2019 WL 399228, at *2 (D. Colo. Jan. 31, 2019) (citation omitted).

owners. ECF No. 4 ¶¶ 2–3, 9–10. Under that agreement, Mr. Murphy paid monthly lot rent, and

he alleges that he remained current on his obligations, including by paying in full a disputed

past-due amount of $593.20 by money order in January 2023. ECF No. 4 ¶¶ 10–11. He further

alleges that, under Colorado's Forcible Entry and Detainer Act, Colo. Rev. Stat. § 13-40-101, *et

seq.*, his full payment should have "instantly ended" the eviction proceedings. ECF No. 4 ¶ 10.

Mr. Murphy contends that, despite this payment, Harmony Communities California

continued to pursue his removal from the lot and that, in January 2023, he removed the

state-court eviction case to this federal court, which temporarily assumed jurisdiction before

ultimately remanding the matter. ECF No. 4 ¶¶ 3–4, 10. He alleges that, in disregard of the

removal and applicable state-law protections, Harmony Communities California proceeded on

January 25, 2023, with what he characterizes as a self-help, non-judicial, "unlawful-eviction," in

violation of the rental contract and Colorado tenant-protection statutes. ECF No. 4 ¶¶ 3–4, 10,

13, 16.

According to the complaint,[4] Harmony Communities California involved law

enforcement by representing to El Paso County deputies that Mr. Murphy was a trespasser

barricaded in a trailer with a firearm, but failed to disclose that he had an existing rental contract,

that he had paid the disputed rent in full twelve days earlier, or that the eviction action had been

---

[4] On November 10, 2022, the park's resident manager served Mr. Murphy with a written
"NOTICE AND DEMAND FOR COMPLIANCE OR POSSESSION" at 5795 Southmoor Drive,
#53, demanding payment of 593.20 (525.00 in November 2022 rent and 68.20 in electric
utilities) within ten days and warning that failure to pay would result in an eviction action under
C.R.S. 13-40-101 *et seq.* and forfeiture of the lease under C.R.S. 13-40-104(1)(d). *See* Case No.
1:23-cv-00143-LTB, Doc. 2 at 5 (D. Colo. Jan. 11, 2023) (removal of El Paso Cty. Ct. Case No.
22CV44760, attaching Nov. 10, 2022 Notice and Demand for Compliance or Possession).

removed to federal court. ECF No. 4 ¶¶ 3–4, 10, 13, 16. Mr. Murphy alleges that Harmony

Communities California breached the peace by initiating the physical eviction before the

court-authorized deadline, without appropriate documentation or uniformed personnel, and by

effectively engaging in a burglary or home-invasion of his home before and after deputies

removed him from the property, all without consulting legal counsel or suspending the eviction

in light of removal. ECF No. 4 ¶¶ 3–4, 10, 13, 16.

Mr. Murphy asserts that these actions resulted in his warrantless arrest on trespass

charges, imposition of a $35,000 bond, and approximately one year of incarceration without a

jury trial, as well as ensuing homelessness and loss of his personal property located in the trailer.

ECF No. 4 ¶¶ 3–4, 10, 13, 16–17. He further alleges that the trespass charge was ultimately

dismissed in his favor as part of a plea agreement resolving a separate assault charge arising from

a brief physical altercation with a responding deputy in his front yard, and he cites a Tenth

Circuit order in related litigation that described the underlying state case as an

"unlawful-detainer (eviction) action." ECF No. 4 ¶¶ 3–4, 10, 13, 16.

Based on these factual allegations, Mr. Murphy brings three Colorado state-law claims

against Harmony Communities California: breach of contract (Count I), malicious prosecution

(Count II), and intentional infliction of emotional distress (Count III), and he seeks pecuniary

relief. ECF No. 4 ¶¶ 1, 6, 11, 14, 17–18. For breach of contract, he seeks to recover the "fruits of

the spoiled contract" in the amount of $44,490, representing six years and three months of lot

rent at approximately $593.20 per month from August 2016 through November 2022. ECF No. 4

¶ 11. For malicious prosecution, he seeks $137,870 in pecuniary relief, consisting of $67,870 in

alleged lost earnings or wages and $70,000 for unlawful imprisonment tied to the trespass

prosecution and year-long incarceration. ECF No. 4 ¶ 14. For intentional infliction of emotional distress, he alleges that Harmony Communities California's conduct was so extreme and outrageous as to be intolerable in a civilized society and requests $1,000,000 in emotional-distress damages. ECF No. 4 ¶ 17. In total, Mr. Murphy seeks pecuniary relief of $1,182,360. ECF No. 4 ¶ 18.

Because Defendant proved difficult to serve at its Stockton, California business address, Mr. Murphy moved for substitute service, which the court granted on May 23, 2025, authorizing service through the California Secretary of State. ECF No. 50. Following that order, Defendant was served via the Secretary of State on June 10, 2025, with its answer due July 1, 2025. ECF Nos. 52, 53. Defendant did not appear or respond, and on July 16, 2025, the Clerk entered default pursuant to Federal Rule of Civil Procedure 55(a). ECF No. 59.

Mr. Murphy thereafter filed the pending motions seeking entry of default judgment by the Clerk and by the court. ECF Nos. 60, 62, 66, 67. Defendant has never appeared in this matter, and the court now considers whether Mr. Murphy has established entitlement to default judgment based on the pleadings and the record.

## II.    LEGAL STANDARD

To obtain a judgment by default, a party must follow the two-step process described in Federal Rule of Civil Procedure 55. First, the party must seek an entry of default from the Clerk of Court under Rule 55(a). Second, after default has been entered by the Clerk, the party must seek judgment in accordance with the parameters articulated in Rule 55(b). *See Williams v. Smithson*, 57 F.3d 1081, 1995 WL 365988, at *1 (10th Cir. June 20, 1995) (unpublished table decision) (citing *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981)).

The decision to enter default judgment is "committed to the district court's sound discretion[.]" *Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1124 (10th Cir. 2003) (citation omitted). In exercising that discretion, the court bears in mind that "[s]trong policies favor resolution of disputes on their merits." *In re Rains*, 946 F.2d 731, 732 (10th Cir. 1991) (quotation and citations omitted). "The default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party." *Id.* (cleaned up) (quotation omitted). On the other hand, default judgment is designed to protect a plaintiff against "interminable delay and continued uncertainty as to his rights." *Id.* at 733 (quotation omitted). When "ruling on a motion for default judgment, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment." *Seme v. E&H Prof'l Sec. Co., Inc.*, No. 08-cv-01569-RPM-KMT, 2010 WL 1553786, at *11 (D. Colo. Mar. 19, 2010), *report and recommendation adopted*, 2010 WL 1553788 (D. Colo. Apr. 16, 2010).

Rule 55 recognizes the fact that "[a] party may not simply sit out the litigation without consequence." *McLaughlin Grp., Inc. v. Am. Mfg. & Mach., Inc.*, No. 20-cv-03531-PAB-JPO, 2024 WL 3849760, at *2 (D. Colo. Aug. 16, 2024) (citing *Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444-45 (10th Cir. 1983)). As previously noted in this Order, one consequence an unresponsive party must face is that the well-pleaded allegations in the complaint are deemed admitted. *Etana Custody Inc.*, 2024 WL 4123495, at *2. But that does not end the court's scrutiny of the request for default. "Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Id.* (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2688.1 (4th ed., 2023 rev.));

*see also, e.g.*, *Mordhorst Cleaning, LLC v. Allstate Ins. Co.*, No. 21-cv-02678-DDD-SKC, 2021 WL 6125404, at *2 (D. Colo. Dec. 28, 2021) ("The court has to make sure the admitted facts state a claim before entering default judgment.") (citations omitted).

In making that assessment, the court is not obliged to countenance mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks and quotation omitted). A claim is facially plausible when the plaintiff pleads factual content that, when taken as true, "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (stating that "[t]echnical fact pleading is not required, but the complaint must still provide enough factual allegations for a court to infer potential victory") (quotation and citation omitted).

## III.    ANALYSIS

When a plaintiff applies for default judgment, the court undertakes a three-step analysis. First, the court must determine whether it has subject-matter jurisdiction over the action and personal jurisdiction over the defaulting defendant. *See Dennis Garber & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997) (holding that "a district court must determine whether it has jurisdiction over the defendant before entering judgment by default

7

against a party who has not appeared in the case"); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("It is to be presumed that a cause lies outside this limited jurisdiction, . . . and the burden of establishing the contrary rests upon the party asserting jurisdiction.") (citations omitted). Second, the court must confirm that the well-pleaded allegations in the complaint state a claim upon which relief may be granted. *See Tripodi v. Welch*, 810 F.3d 761, 765 (10th Cir. 2016) (observing that, "even in default, a defendant is not prohibited from challenging the legal sufficiency of the admitted factual allegations," and that "[t]he judgment must be supported by a sufficient basis in the pleadings") (citing *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010)). Third, the court evaluates the moving party's claim for damages. In doing so, the court may "conduct hearings or make referrals," Fed. R. Civ. P. 55(b)(2), but if "the amount claimed is a liquidated sum or one capable of mathematical calculation," *id.*, the court may dispense of a hearing and "rely on detailed affidavits or documentary evidence." *Chisolm v. Glob. Graphics & Designs Inc.*, No. 20-cv-00344-PAB-SKC, 2021 WL 4426951, at *1 (D. Colo. Sept. 27, 2021) (citation and internal quotation marks omitted). Mr. Murphy has not satisfied these requirements.

### A. Jurisdiction

Before addressing the merits of Mr. Murphy's request for default judgment, the court must first evaluate its jurisdiction. *See Dennis Garber & Assocs.*, 115 F.3d at 772. This requires consideration of both subject-matter jurisdiction and personal jurisdiction, including the adequacy of service of process.

### 1. Subject-Matter Jurisdiction

Mr. Murphy invokes the court's diversity jurisdiction under 28 U.S.C. § 1332. To

establish diversity jurisdiction, a plaintiff must demonstrate complete diversity of citizenship between the parties and an amount in controversy exceeding $75,000, exclusive of interest and costs. *McPhail v. Deere & Co.*, 529 F.3d 947, 952 (10th Cir. 2008). Mr. Murphy seeks $1,182,360 in pecuniary relief, well above the $75,000 jurisdictional threshold. ECF No. 4 ¶ 18.

In a supplemental filing submitted in response to the court's jurisdictional concerns, Mr. Murphy represents that Defendant Harmony Communities California is a corporation incorporated under the laws of the State of California, with its principal place of business in California, and that it is not a limited liability company or other unincorporated entity. *See* ECF No. 21 ¶ 3. Mr. Murphy further represents that, according to the California Secretary of State's public records, Harmony Communities, Inc. is identified as a California corporation (entity no. 3191537). *Id.*

For purposes of diversity jurisdiction, a corporation is deemed a citizen of both its state of incorporation and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). Accepting Mr. Murphy's unrebutted representations at this stage, the court is satisfied that he has adequately alleged complete diversity of citizenship and an amount in controversy exceeding $75,000 and thus established diversity jurisdiction under § 1332.

## 2. Personal Jurisdiction and Service of Process

Mr. Murphy bears the burden to establish personal jurisdiction over Harmony Communities California. S*ee Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988). He may satisfy this burden by making a prima facie showing based on the well-pleaded allegations in the complaint and other record materials, which the court accepts as true at this stage. S*ee Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008);

*AST Sports Sci., Inc. v. CLF Distrib. Ltd*., 514 F.3d 1054, 1057 (10th Cir. 2008).

"In determining whether a federal court has personal jurisdiction over a defendant, the court must determine '(1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process.'" *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (quotation omitted). Colorado's long-arm statute extends jurisdiction to the maximum extent permitted by the Constitution, so the statutory and constitutional inquiries collapse into a single due-process analysis. *See Dudnikov*, 514 F.3d at 1070; *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2008).

Personal jurisdiction comports with due process when the defendant has minimum contacts with the forum state and the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). Minimum contacts may be established through general or specific jurisdiction. *Howarth v. TCER, LLC,* No. 20-cv-03230-PAB-KMT, 2021 WL 4775270, at *2 (D. Colo. Oct. 13, 2021).

Mr. Murphy alleges that he resided at a lot in a mobile-home park in Fountain, Colorado, from 2016 until January 2023; that Harmony Communities California later owned or managed that park; and that the eviction and related events giving rise to his claims occurred in Colorado. ECF No. 4 ¶¶ 2–4, 9–10. These allegations reflect that Defendant purposefully engaged in activities directed at Colorado and that Mr. Murphy's alleged injuries arise out of those forum-related activities, supporting the exercise of specific personal jurisdiction consistent with due process. *Id*. ¶¶ 3–4, 10, 13, 16–17.

Proper service of process is a jurisdictional prerequisite. "Effectuation of service is a

precondition to suit." *Jenkins v. City of Topeka*, 136 F.3d 1274, 1275 (10th Cir. 1998). Without proper service, the court lacks personal jurisdiction over a defendant. *Okla. Radio Assocs. v. Fed. Deposit Ins. Co.*, 969 F.2d 940, 943 (10th Cir. 1992); *see also Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999).

The docket shows that Mr. Murphy first attempted personal service multiple times at Defendant's Stockton, California business address and filed affidavits of reasonable diligence. ECF No. 18. After those attempts failed, he moved for substitute service, and on May 23, 2025, the court authorized service through the California Secretary of State. ECF No. 50. The summons was then returned executed on June 10, 2025, reflecting service via the Secretary of State and setting Defendant's answer deadline as July 1, 2025. ECF Nos. 52–53. Defendant did not respond, and on July 16, 2025, the Clerk entered default. ECF No. 59.

The court finds that service on Harmony Communities California was effected in accordance with its order and applicable law. Service therefore poses no jurisdictional barrier to the exercise of personal jurisdiction or to consideration of Mr. Murphy's request for default judgment.

### B. Merits Analysis and the Defects in Mr. Murphy's Pleading

#### 1. Breach-of -Contract Claim (Count I)

To enter default judgment against Harmony Communities California, the court must find, based on the well-pleaded allegations in the complaint, that Defendant is liable for breach of contract under Colorado law. ECF No. 4 ¶¶ 9–11. Under Colorado law, a breach of contract claim has four elements: "(1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and

(4) resulting damages to the plaintiff." *Matthys v. Narconon Fresh Start*, 104 F. Supp. 3d 1191, 1204 (D. Colo. 2015) (citing *Contrada, Inc. v. Parsley*, No. 10–cv–00646–WYD–CBS, 2012 WL 573918, at *2 (D. Colo. Feb. 22, 2012) (citing *Western Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992)).

Mr. Murphy alleges that he entered into a valid rental contract in August 2016 with the prior owners of the mobile-home park for the lot on which his fifth-wheel trailer was located, that he performed by paying monthly lot rent, and that he paid in full a disputed past-due rent amount of $593.20 by money order on January 13, 2023. ECF No. 4 ¶¶ 2–3, 9–11. He further alleges that Harmony Communities California later took over ownership or management of the park but failed to honor the "grandfathered" contract and Colorado tenant-protection law, proceeded with a self-help "unlawful-eviction" on January 25, 2023, despite his payment and removal of the case to federal court, and thereby caused him incarceration, homelessness, and loss of personal property. ECF No. 4 ¶¶ 3–4, 9–10, 13, 16–17.

However, the Motions do not identify the specific elements of a Colorado breach-of-contract claim or explain, in a structured way, how the admitted factual allegations satisfy each element as to Harmony Communities California in its capacity as successor owner or manager. *See* ECF Nos. 62, 66, 67. For example, they do not clearly articulate how and on what basis Defendant became bound to the prior owner's contract, what precise contractual term was allegedly breached by the January 25, 2023 eviction, or how the requested $44,490 in "fruits of the spoiled contract" is tied to the scope of any contractual obligation owed by Defendant as opposed to the original contracting party. ECF No. 4 ¶ 11. On this record, the court lacks a sufficiently developed, element-by-element showing that would permit entry of default judgment

on Count I.

### 2. Malicious-Prosecution Claim (Count II)

Mr. Murphy next seeks default judgment on his Colorado malicious-prosecution claim. ECF No. 4 ¶¶ 12–14. In Colorado, a malicious-prosecution plaintiff generally must establish: (1) the defendant contributed to bringing a prior action against the plaintiff; (2) the prior action ended in favor of the plaintiff; (3) no probable cause; (4) malice; and (5) damages. *Hewitt v. Rice*, 154 P.3d 408, 411 (Colo. 2007).

The complaint alleges that Harmony Communities California pursued an "unlawful-detainer (eviction)" and related trespass proceedings against Mr. Murphy even after he paid the disputed rent and removed the case to federal court, that the trespass arrest and prosecution lacked probable cause, and that the trespass charge was ultimately dropped in his favor as part of a plea agreement. ECF No. 4 ¶¶ 3–4, 10, 13, 16–17. Mr. Murphy alleges that Defendant acted with malice or an improper purpose, that its actions resulted in approximately one year of incarceration and other harms, and that he seeks $137,870 in damages for lost earnings and "unlawful-imprisonment." ECF No. 4 ¶¶ 12–14.

Yet the Motions do not set out the elements of malicious prosecution under Colorado law or tie those elements to specific, admitted allegations and docket references. *See* ECF Nos. 62, 66, 67. They do not, for example, clearly delineate what "proceeding" is at issue for Count II (eviction, criminal trespass, or both), what acts by Harmony Communities California constitute "initiation" or "continuation" of that proceeding, or how the allegations regarding dismissal of the trespass charge satisfy the "termination in plaintiff's favor" element, given that dismissal occurred in the context of a plea bargain on a separate charge. ECF No. 4 ¶¶ 13–14, 16–17.

Without a claim-specific legal analysis linked to the record, the court cannot conclude that the

admitted facts establish a legitimate malicious-prosecution cause of action warranting default

judgment.

### 3.  Intentional-Infliction-of-Emotional-Distress (IIED) Claim (Count III)

Finally, Mr. Murphy seeks default judgment on his claim for intentional infliction of

emotional distress. ECF No. 4 ¶¶ 15–17. Under Colorado law, to establish IIED, sometimes

referred to as the tort of extreme and outrageous conduct, a plaintiff generally must show that:

(1) the defendant engaged in extreme and outrageous conduct; (2) the defendant engaged in the

conduct recklessly or with the intent of causing the plaintiff severe emotional distress; and

(3) the plaintiff incurred severe emotional distress that was caused by the defendant's conduct.

*See Culpepper v. Pearl St. Bldg., Inc*., 877 P.2d 877, 882–83 (Colo. 1994) (citing Restatement

(Second) of Torts § 46 and *Rugg v. McCarty,* 173 Colo. 170, 476 P.2d 753 (1970)).

Mr. Murphy alleges that Harmony Communities California: (1) misled El Paso County

deputies by asserting that he was a trespasser barricaded in a trailer with a gun; (2) failed to

disclose to deputies that he had paid the disputed rent on January 13, 2023, and that he had

removed the state-court eviction to federal court on January 18, 2023; and (3) proceeded with

what he characterizes as a "self-help," unlawful eviction on January 25, 2023, before the 11:00

a.m. deadline, without supporting documentation or uniformed personnel and in a manner he

likens to a burglary or home invasion. ECF No. 4 ¶¶ 3–4, 10, 13, 16. He further alleges that, after

deputies arrived in response to Harmony's report, he was arrested without a warrant, subjected to

a thirty-five-thousand dollar bond, incarcerated for 365 days without a jury trial, rendered

homeless, and deprived of his personal property, and that these events caused him severe

emotional distress for which he seeks 1,000,000 dollars in damages. *Id*. ¶¶ 16-17.

Even accepting these factual allegations as admitted for purposes of default, they do not establish the elements of IIED against Harmony as a matter of law. First, the most "egregious" consequences Mr. Murphy identifies—the warrantless arrest, setting of bond, criminal prosecution, year-long incarceration, and resulting criminal conviction for assaulting a responding deputy—were actions of law-enforcement officers, prosecutors, and the state criminal court, not Harmony. Mr. Murphy affirmatively alleges that "the ridiculous Trespassing-charge was eventually dropped … as part of a plea-bargain deal for assaulting one of the responding-deputies during a brief-scuffle in Plaintiff-Murphy's front-yard," which underscores that his incarceration flowed from his own criminal conduct toward an officer, rather than from Harmony's desire to cause him emotional harm. *See id*. ¶ 10. Harmony's alleged mischaracterization of his status as a trespasser and its decision to proceed with an unlawful eviction may support other theories (such as breach of contract or malicious prosecution), *see* Compl. ¶¶ 9–14 (Count I) & 12–14 (Count II), but the intervening, discretionary decisions of deputies, prosecutors, and a criminal court break the causal chain for purposes of IIED and render Harmony's conduct too attenuated to be the legal cause of his incarceration-related distress.

Second, the complaint does not plausibly allege that Harmony's conduct, viewed in context, was "so outrageous in character, and so extreme in degree" that it satisfies the high Colorado standard. Mr. Murphy characterizes Harmony as an "out-of-State slumlord & felon-burglar maintenance-man/super" that pursued a "self-help, non-judicial, 'unlawful' botched-Eviction," misled deputies about his possession of a gun, and failed to disclose the rent

payment and removal. ECF No. 4 ¶ 13. Those allegations, if true, may describe sharp practices or even unlawful conduct in the landlord-tenant and eviction context, but collection efforts, contract breaches, mishandled evictions, and even intentional resort to legal process, without more, generally do not qualify as "atrocious and utterly intolerable" conduct for IIED purposes. *See Stalder v. Colorado Mesa University*, 2024 COA 29, ¶¶ 39–41, 551 P.3d 679, 686–87 (quoting *Destefano v. Grabrian,* 763 P.2d 275, 286 (Colo. 1988), and citing *Reigel v. SavaSeniorCare L.L.C.*, 292 P.3d 977, 990 (Colo. App. 2011)). Harmony's acts as pleaded were aimed at regaining possession of the lot and prosecuting an eviction action, not at terrorizing Mr. Murphy purely for its own sake. The admitted facts therefore fall short of the "extreme and outrageous" threshold.

Third, Mr. Murphy's pleading does not adequately allege that Harmony acted with the specific intent to cause, or in reckless disregard of the likelihood of causing, severe emotional distress. The complaint repeatedly alleges that Harmony acted to carry out an unlawful detainer and to remove him from the property, and that its actions were malicious for purposes of malicious prosecution; but it does not include non-conclusory facts showing that Harmony's decision-makers subjectively intended to cause him profound psychological injury, as opposed to dispossessing him of the lot and enforcing its view of the lease. Nor does it allege facts establishing that Harmony knew, or should have known, that its communications with deputies and its participation in the eviction process would likely result in the particular criminal chain of events—a physical altercation with law enforcement, a separate assault charge, a negotiated plea, and a year of incarceration—that Mr. Murphy says caused his emotional distress. Without such facts, the second element of IIED is not satisfied.

Finally, while Mr. Murphy seeks 1,000,000 dollars for "emotional-distress," Compl. ¶ 17, the default-judgment Motions do not point to competent evidence demonstrating distress of the severity Colorado law requires. The complaint contains conclusory statements that he suffered "emotional-distress," Compl. ¶¶ 16–17, 116–17, but it does not allege, and the Motions do not identify, non-conclusory facts or supporting materials—such as medical or mental-health treatment, diagnoses, physical manifestations, loss of sleep, inability to function, or similar indicia—from which the court could find that his distress attributable to Harmony's conduct, as opposed to his incarceration following an assault on a deputy, was so severe that no reasonable person could be expected to endure it. In a default-judgment posture, the court may accept well-pleaded facts as true, but it may not accept bare legal conclusions regarding "severe emotional distress" in the absence of factual and evidentiary support.

Accordingly, even treating the factual allegations of the complaint as admitted, Mr. Murphy has not demonstrated that Harmony Communities California engaged in extreme and outrageous conduct directed at him with the requisite intent or recklessness, that Harmony legally caused the most serious harms of which he complains, or that he suffered severe emotional distress supported by competent evidence. On this record, the admitted facts do not satisfy each element of IIED under Colorado law, and the Court therefore cannot enter default judgment on Count III.

### 4. Consequences of the Pleading Defects

By virtue of the Clerk's entry of default, the well-pleaded factual allegations in the complaint are deemed admitted, except as to damages. Fed. R. Civ. P. 8(b)(6); ECF No. 59. But "even after default, it remains for the court to consider whether the unchallenged facts constitute

17

a legitimate cause of action, since a party in default does not admit conclusions of law." *Etana Custody Inc.*, 2024 WL 4123495, at *2. Courts in this District have denied default-judgment motions without prejudice where, as here, the movant failed to provide claim-by-claim legal analysis showing why the admitted facts entitle the plaintiff to judgment. *See McLaughlin Grp., Inc. v. Am. Mfg. & Mach., Inc.*, No. 20-cv-03531-PAB-JPO, 2024 WL 3849760, at *4 (D. Colo. Aug. 16, 2024).

On the current record, Mr. Murphy's Motions do not: (1) clearly identify, on a count-by-count basis, the specific state-law claims on which he seeks default judgment; (2) set out the governing elements of each claim under Colorado law; or (3) connect those elements to particular paragraphs of the complaint and other docketed materials. *See* ECF Nos. 62, 66, 67. The absence of that claim-specific legal and factual showing means there is not a "sufficient basis in the pleadings" to support entry of default judgment at this time. *See Tripodi* 810 F.3d at 765. This deficiency alone requires that Mr. Murphy's requests for default judgment be denied without prejudice.

### C. Damages

Because default has been entered, the well-pleaded factual allegations as to liability are taken as true, but Mr. Murphy still bears the burden to prove his damages. Mr. Murphy's complaint itemizes his requested damages by count. For Count I (breach of contract), he seeks $44,490, calculated as six years and three months of lot rent at $593.20 per month (75 × $593.20). ECF No. 4 ¶ 11. For Count II (malicious prosecution), he seeks $137,870, consisting of $67,870 in alleged lost earnings or wages and $70,000 for "unlawful-imprisonment." *Id.* ¶ 14. For Count III (IIED), he seeks $1,000,000 in compensation for emotional distress. *Id.* ¶ 17. In

total, Mr. Murphy requests $1,182,360 in pecuniary relief. *Id*. ¶ 18.

This itemization in the pleading is helpful, but the Motions do not supply evidentiary support or explanation adequate to permit the court to enter judgment in those amounts. They do not attach the rental contract or rent-payment records that would substantiate the duration of the tenancy and the $593.20 monthly rate, provide documentation or calculations supporting the specific $67,870 lost-earnings figure, supply any evidentiary basis for the $70,000 unlawful-imprisonment amount beyond the narrative description, or present evidence, medical or otherwise, to support a $1,000,000 emotional-distress award.

Rule 55(b)(2) permits the court to rely on affidavits and documentary evidence in determining damages and, where the sum is liquidated or capable of mathematical calculation, to dispense with a hearing. But even in a default posture, the court must ensure that any award has a "sufficient evidentiary basis" and does not exceed what is supported by the pleadings and Rule 54(c). On the current record, particularly as to the non-liquidated components for lost wages, unlawful imprisonment, and emotional distress, Mr. Murphy has not provided the kind of detailed, sworn proof necessary for the court to determine a reasonable amount with confidence, especially given the size of the total award requested. Accordingly, while the court does not foreclose the possibility that Mr. Murphy may ultimately be able to prove damages, the present showing is inadequate to support entry of default judgment in the amounts requested.[5]

---

[5] In addition, to obtain a default judgment by the Clerk under Rule 55(b)(1), a party must comply with D.C.COLO.LCivR 55.1, including submitting an affidavit showing that the defaulted defendant is not a minor, incompetent person, or in military service and establishing a sum certain or a sum that can be made certain by computation. D.C.COLO.LCivR 55.1(a). Mr. Murphy's Motions do not make the showings required by Rule 55(b)(1) and Local Rule 55.1 for entry of a clerk's default judgment for a sum certain.

## IV.    CONCLUSION

In sum, the court concludes that: (1) it has subject-matter jurisdiction and personal

jurisdiction, and service was properly effected; (2) the complaint contains factual allegations that

could support one or more of Mr. Murphy's state-law claims; but (3) his Motions do not provide

the claim-by-claim legal analysis or the evidentiary foundation for damages required to enter

default judgment at this time. Accordingly, it is **ORDERED**[6] that Mr. Murphy's Motions for

Entry of Default Judgment (ECF Nos. 62, 66, 67) are **DENIED WITHOUT PREJUDICE**.

If Mr. Murphy wishes to renew his request for default judgment, he must file (a) a

renewed motion that identifies, on a count-by-count basis, the specific claims (Counts I–III) on

which he seeks default judgment; sets forth the elements of each claim under Colorado law; and

cites to the particular paragraphs of the complaint and any other docketed materials that satisfy

each element; and (b) a sworn, itemized damages declaration that confirms the precise amount

sought on each count (for example, $44,490 on Count I, $137,870 on Count II, and $1,000,000

on Count III, or any revised figures); explains in detail how each amount was calculated,

including applicable time periods, rates, and assumptions; and attaches supporting

---

[6] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after
service of a Magistrate Judge's order or recommendation, any party may serve and file written
objections with the Clerk of the United States District Court for the District of Colorado.
28 U.S.C. §§ 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection
will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See
Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 783 (10th Cir. 2021) (firm waiver
rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119,
1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require
review, including when a "pro se litigant has not been informed of the time period for objecting
and the consequences of failing to object").

documentation where reasonably available, such as the rental agreement, rent-payment records,

documentation relating to lost earnings and incarceration, and any evidence supporting the

requested emotional-distress damages. After reviewing any renewed motion and supporting

materials, the court will determine whether a hearing under Rule 55(b)(2) is necessary or

whether the matter may be resolved on the papers.


DATED: January 30, 2026                    BY THE COURT:

                                           _____
                                           Susan Prose
                                           United States Magistrate Judge